

SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

JUL - 8 2009

J. T. NOBLIN, CLERK
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

UNITED STATES OF AMERICA

v.                                                    CRIMINAL NO.  3:08cr77 DPJ-JCS

MARK J. CALHOUN,                        **SECOND SUPERSEDING**
APRIL CALHOUN,                           **INDICTMENT**
WILLIE JONES,
J. LARRY KENNEDY, and            18 U.S.C. § 1349
KEITH M. KENNEDY                    18 U.S.C. § 1343
                                                        18 U.S.C. § 1956(h)
                                                        18 U.S.C. § 1956(a)(1)(A)(i)
                                                        18 U.S.C. § 1957

**The Grand Jury charges:**

At all times relevant to this indictment:

1.      Defendants **MARK J. CALHOUN** (hereinafter "**M. CALHOUN**"), and **APRIL CALHOUN** (hereinafter "**A. CALHOUN**"), were mortgage brokers engaged in the business of obtaining loans for borrowers with various lenders for a fee.

2.      Defendant **M. CALHOUN** was working as a mortgage broker in Hinds, Rankin, and Madison Counties in the Jackson Division of the Southern District of Mississippi and elsewhere, either as an agent of Professional Mortgage Consultants Corporation (hereinafter "PMCC") or operating as New World Mortgage d/b/a Silver Cross Financial Group, LLC, also known as SCFG.

3.      Defendant **A. CALHOUN** was working as a mortgage broker and processor in Hinds, Rankin, and Madison Counties in the Jackson Division of the Southern District of Mississippi and elsewhere, as an agent of New World Mortgage d/b/a Silver Cross Financial

Group, LLC.

4.      Defendant **M. CALHOUN** incorporated and operated Fast Start Mortgage, Inc., also known as "Fast Start".

5.      Defendant **M. CALHOUN** incorporated and operated Silver Cross Financial Group, LLC, also known as "SCFG".

6.      Defendant **A. CALHOUN** was the owner and manager of M & C Investments, LLC.

7.      Defendant **WILLIE JONES** (hereinafter **"W. JONES"**) was a mortgage broker in Hinds, Rankin, and Madison Counties in the Jackson Division of the Southern District of Mississippi and elsewhere, under the company names Windsor Financial and Fidelity Mortgage Consultants, LLC.

8.      Defendant **W. JONES**  incorporated and managed, Metro One Investment, LLC, and also incorporated and owned Unlimit Construction, LLC.

9.      Defendants **J. LARRY KENNEDY** (hereinafter **"L. KENNEDY"**) and **KEITH M. KENNEDY** (hereinafter **"K. KENNEDY"**)  were engaged primarily in the business of closing real estate loans, and incorporated and operated LCTS, Inc., also known as Loan Closings and Title Services, Inc.

## COUNT 1

10.     Beginning in or about September, 2004, and continuing through a date unknown but at least through in or about September, 2006, in Hinds County, in the Jackson Division of the Southern District of Mississippi and elsewhere, the defendants **MARK J. CALHOUN, APRIL CALHOUN, WILLIE JONES, J. LARRY KENNEDY,** and **KEITH M. KENNEDY** did

knowingly and willfully conspire with each other and with others known and unknown to the

Grand Jury to commit one or more of the following offenses against the United States:

(A).  To knowingly devise a scheme and artifice to defraud and to obtain money by
means of materially false and fraudulent pretenses, representations and promises,
and for the purpose of executing the scheme or artifice, and attempting to do so,
did place or cause to be placed in any post office or authorized depository for mail
matter, documents to be sent or delivered by the Postal Service, or deposit or
cause to be deposited documents to be sent or delivered by any private or
commercial interstate carrier, in violation of Section 1341, Title 18, United States
Code.

(B).  To knowingly devise a scheme or artifice or intend to devise a scheme or artifice
to defraud and to obtain money by means of materially false and fraudulent
pretenses, representations, or promises and, for the purpose of executing the
scheme, did transmit or cause to be transmitted by means of wire or radio
communications in interstate commerce, any writings, signals or sounds, in
violation of Section 1343, Title 18, United States Code.

11.    It was an object of the conspiracy that defendants **M. CALHOUN, A.**

**CALHOUN** and others would broker mortgages for a fee by obtaining mortgages for borrowers

through various lenders.

12.    It was an object of the conspiracy that the defendants **M. CALHOUN, A.**

**CALHOUN, W. JONES, L. KENNEDY, K. KENNEDY,** and others, would provide false

information to potential lenders in order to obtain fraudulent mortgage loans for numerous

prospective borrowers.

13.    It was further an object of the conspiracy for the defendants **M. CALHOUN, A.**

**CALHOUN, W. JONES, L. KENNEDY, K. KENNEDY,** and others to enrich themselves to

the detriment of the borrowers and lenders by causing false and fictitious documents to be

created and submitted to the lenders to ensure that mortgage loans would be funded.  Thereafter,

defendants **L. KENNEDY** and **K. KENNEDY**, operating as LCTS, Inc., served as closing

agents to consummate these fraudulent mortgage loans and disburse the proceeds, some of which

these defendants and others would convert for their own use and benefit.

14.     It was a part of the conspiracy that defendant  **M. CALHOUN** and others would

recruit persons to purchase homes as "investors" for the purpose of immediately leasing said

properties to various tenants identified and selected by defendant **M. CALHOUN** and others.

15.     It was part of the conspiracy that the defendant **W. JONES** and others, would sell

some of these properties to various individuals, and that these sales were funded through

fraudulent mortgage loans obtained by defendants **M. CALHOUN, A. CALHOUN** and others

from various lenders for numerous unqualified borrowers.

16.     To fund the acquisition of the homes, it was part of the conspiracy that defendants

**M. CALHOUN, A. CALHOUN, W. JONES** and others would obtain basic information from

the prospective borrowers  and thereafter match them with mortgage lenders by preparing the

loan application and supporting documents for each borrower and submitting the completed loan

application package to a lender, all for a fee.  No fee was paid to defendants **M. CALHOUN, A.**

**CALHOUN,  L. KENNEDY,** and **K. KENNEDY** unless the defendants were successful in

obtaining a loan for the prospective borrower.

17.     Thereafter, in order to qualify the borrower for the mortgage, defendants **M.**

**CALHOUN** and **A. CALHOUN** or others acting at their direction, would enter false

information onto the loan application forms in an effort induce the lender to make the loan.   The

false information typically included, but was not limited to, representations that the prospective

borrower was applying for a residential mortgage loan as a primary residence, when in fact

defendants **M. CALHOUN** and **A. CALHOUN** knew that the borrower sought funding to

acquire the residence as a rental property.  On some occasions defendants **M. CALHOUN** and

**A. CALHOUN** falsely concealed the borrower's existing or pending financial liability for other

mortgage loans to purchase other rental properties.

18.    It was a part of the conspiracy that defendants **M. CALHOUN, A. CALHOUN,**

**W. JONES** and others would prepare false and fictitious documents to support the false

information contained on the loan application and to insure that lenders would make mortgage

loans to prospective borrowers.  These documents included, but are not limited to, false

verification of employment ("VOE") documents; false residential lease agreements; false

documents verifying a borrower's income and liabilities; and false creditor invoices.  The false

and fictitious documents, along with the loan application containing false information, would be

included in each loan application packet submitted by defendants **M. CALHOUN, A.**

**CALHOUN, W. JONES, L. KENNEDY, K. KENNEDY,** and others to potential lenders.

19.    It was a part of the conspiracy that defendants **M. CALHOUN, A. CALHOUN,**

and others would falsely list that the borrower would provide cash at closing or had funds for the

down payment on the loan application.  By falsely and fraudulently making it appear that certain

buyers would provide cash at closing or had made their own down payments, defendants **M.**

**CALHOUN** and  **A. CALHOUN** created the appearance of qualified and secured mortgages,

thus making the mortgages more marketable to a mortgage investor.

20.    Thereafter, defendants  **L. KENNEDY, K. KENNEDY,** and others acting at their

direction submitted false documents to the various lenders fraudulently representing that the

borrower paid cash at the closing of the loan or otherwise paid some down payment toward the

loan when no such funds were paid by the borrower.

21.    It was a part of the conspiracy that defendants **M. CALHOUN, A. CALHOUN, W. JONES**, and others would create fictitious creditors to which borrowers and sellers allegedly were indebted for construction, management, marketing, and consultant fees, when in fact no such debt was owed.

22.    Thereafter, defendants **L. KENNEDY** and **K. KENNEDY**, and others acting at their direction, would prepare and execute fraudulent HUD-1 Settlement Statements listing these fictitious creditors, including but not limited to Fast Start Mortgage, Inc., Willie Jones, Metro One Investment, LLC, and M & C Investments, LLC, along with legitimate creditors on the HUD-1 Settlement Statement, or an attachment thereto, so that proceeds from the loan could be disbursed to the fictitious creditor.  These funds for fraudulently invoiced construction, management, marketing, and consultant fees were then provided by defendants **L. KENNEDY, K. KENNEDY** to defendants **M. CALHOUN, A. CALHOUN, W. JONES**, and others, who would convert those funds to their own use and benefit to the detriment of the borrowers, the sellers, and the lenders.

23.    It was a part of the conspiracy that in order to obtain and retain the mortgage loan proceeds from the lenders, defendants **L. KENNEDY** and **K. KENNEDY** would falsely represent to lenders through their notary of the loan closing documents that the borrowers personally appeared before defendants **L. KENNEDY** and **K. KENNEDY** at the loan closing and executed the loan closing documents in their presence.

24.    It was part of the conspiracy that defendants **M. CALHOUN, A. CALHOUN, W. JONES,  L. KENNEDY** and **K. KENNEDY** would include the false and fictitious documents, along with the loan application containing false information, in each loan packet submitted to the

various lenders located outside the state of Mississippi.

25.     It was further a part of the conspiracy that from approximately September 2004,

through a date unknown but at least through approximately September, 2006, defendants **M.**

**CALHOUN, A. CALHOUN, W. JONES, L. KENNEDY, K. KENNEDY**, and others

successfully obtained at least approximately 40 mortgage loans totaling in excess of $9 million

by making false entries on documents and creating false documentation submitted to the lenders

to obtain the loans.

26.     To accomplish the objectives thereof, false and fictitious documents, along with

the loan application containing false information, would be included in each loan application

packet submitted by defendants **M. CALHOUN, A. CALHOUN, W. JONES, L. KENNEDY,**

**K. KENNEDY**, and others to potential lenders by means of the United States mails, private and

commercial carriers and interstate wires, either by means of facsimiles or by a computer emailing

system or by causing funds to be wire transferred to financial institutions.

27.     In furtherance of the unlawful conspiracy and to accomplish the objectives

thereof, the following acts, among others, were committed:

(A).     On or about September 20, 2004, defendants **M. CALHOUN, W. JONES, K.**

**KENNEDY** and others caused a loan to be issued to Borrower #1 for approximately $68,151.16.

From these loan proceeds, defendants **M. CALHOUN,  W. JONES, K. KENNEDY** and others

fraudulently converted approximately $25,500.00 for their own benefit and for the benefit of

their co-conspirators.

(B).     On or about September 29, 2004, a Certificate of Formation was filed by

defendant **W. JONES** forming Metro One Investment, LLC.

(C).    On or about October 07, 2004, defendants **M. CALHOUN, W. JONES, K.**

**KENNEDY** and others caused a loan to be issued to Borrower #1 for approximately $46,930.76.

From these loan proceeds, defendants **M. CALHOUN, W. JONES, K. KENNEDY** and others

fraudulently converted approximately $20,356.76 for their own benefit and for the benefit of

their co-conspirators.

(D).    On or about January 06, 2005, Articles of Incorporation were filed by defendant

**M. CALHOUN** forming Fast Start Mortgage, Inc.

(E).    On or about February 10, 2005, defendants **M. CALHOUN, A. CALHOUN, W.**

**JONES, L. KENNEDY, K. KENNEDY** and others caused a loan to be issued to Borrower #2

for approximately $266,592.12.  From these loan proceeds, defendants **M. CALHOUN** and **W.**

**JONES, L. KENNEDY, K. KENNEDY** and others fraudulently converted approximately

$41,580.08 for their own benefit and for the benefit of their co-conspirators.

(F).    On or about February 16, 2005, defendants **M. CALHOUN, A. CALHOUN, W.**

**JONES, L. KENNEDY, K. KENNEDY** and others caused a loan to be issued to Borrower #2

for approximately $368,224.36,  From these loan proceeds, defendants **M. CALHOUN, A.**

**CALHOUN, L. KENNEDY, K. KENNEDY** and others fraudulently converted approximately

$66,500.00 for their own benefit and for the benefit of their co-conspirators.

(G).    On or about March 25, 2005, a Certificate of Formation was filed by defendant

**W. JONES** forming Unlimit Construction, LLC.

(H).    On or about March 28, 2005, defendants **M. CALHOUN , W. JONES, K.**

**KENNEDY** and others caused a loan to be issued to Borrower #16 for approximately

$88,200.00.  From these loan proceeds, defendants **M. CALHOUN, W. JONES, K. KENNEDY** and others fraudulently converted approximately $34,479.95 for their own benefit and for the benefit of their co-conspirators.

(I).     On or about May 25, 2005, defendants **M. CALHOUN, L. KENNEDY, K. KENNEDY** and others caused loans to be issued to Borrower # 9 for approximately $413,000.00.  From these loan proceeds, defendants **M. CALHOUN, L. KENNEDY, K. KENNEDY** and others fraudulently converted approximately $350,000.00 for their own benefit and for the benefit of their co-conspirators.

(J).     On or about September 30, 2005, a Certificate of Formation was filed by defendant **M. CALHOUN** forming Silver Cross Financial Group, LLC.

(K).     On or about November 09, 2005, a Certificate of Formation was filed by defendant **A. CALHOUN** forming M & C Investments, LLC.

(L).     On or about December 09, 2005, defendants **M. CALHOUN, A. CALHOUN, L. KENNEDY, K. KENNEDY** and others caused a loan to be issued to Borrower #11 for approximately $512,00.00.  From these loan proceeds, **M. CALHOUN, A. CALHOUN, L. KENNEDY, K. KENNEDY** and others fraudulently converted approximately $80,672.07 for their own benefit and for the benefit of their co-conspirators.

(M).     On or about January 12, 2006, defendants **M. CALHOUN, A. CALHOUN,  L. KENNEDY, K. KENNEDY** and others caused a loan to be issued to Borrower #8 for approximately $188,406.80.  From these loan proceeds, defendants **M. CALHOUN, A. CALHOUN,  L. KENNEDY, K. KENNEDY** and others fraudulently converted approximately

$30,883.20 for their own benefit and for the benefit of their co-conspirators.

(N).   On or about February 17, 2006, defendants **M. CALHOUN, A. CALHOUN, L. KENNEDY, K. KENNEDY** and others caused a loan to be issued to Borrower #5 for approximately $393,147.60.   From these loan proceeds, defendants **M. CALHOUN, A. CALHOUN, L. KENNEDY** and **K. KENNEDY** and others fraudulently converted approximately $58,194.00 for their own benefit and for the benefit of their co-conspirators.

(O).   On or about April 3, 2006, defendants **M. CALHOUN, A. CALHOUN, L. KENNEDY, K. KENNEDY** and others caused a loan to be issued to Borrower #14 for approximately $285,811.17.   From these loan proceeds, defendants **M. CALHOUN, A. CALHOUN,  L. KENNEDY, K. KENNEDY** and others fraudulently converted approximately $55,485.04 for their own benefit and for the benefit of their co-conspirators.

All in violation of Section 1349, Title 18, United States Code.

### COUNTS 2-16

28.     The allegations contained in paragraphs 1-9 and 11-26, of this indictment are hereby re-alleged and incorporated herein as though fully set forth in this paragraph.

29.     Beginning in or about September 2004, and continuing through a date unknown but at least through in or about September, 2006, in Hinds County, in the Jackson Division of the Southern District of Mississippi and elsewhere, the defendants **MARK J. CALHOUN, APRIL CALHOUN, WILLIE JONES, J. LARRY KENNEDY**, and **KEITH M. KENNEDY**, aided and abetted by others known and unknown to the Grand Jury, knowingly and intentionally devised, intended to devise and carried out and attempted to carry out a scheme to defraud mortgage loan borrowers and lenders and to obtain money by materially false and fraudulent

pretenses, representations and promises.

30.     It was part of the scheme that defendants **M. CALHOUN, A. CALHOUN** and others would broker mortgages for a fee by obtaining mortgages for borrowers through various lenders.

31.     It was part of the scheme that defendants **M. CALHOUN, A. CALHOUN, W. JONES, L. KENNEDY, K. KENNEDY,** and others, would provide false information to potential lenders in order to obtain fraudulent mortgage loans for numerous prospective borrowers.

32.     It was further an part of the scheme for the defendants **M. CALHOUN, A. CALHOUN, W. JONES, L. KENNEDY, K. KENNEDY,** and others to enrich themselves to the detriment of the borrowers and lenders by causing false and fictitious documents to be created and submitted to the lenders to ensure that mortgage loans would be funded.  Thereafter, defendants **L. KENNEDY** and **K. KENNEDY**, operating as LCTS, Inc., served as closing agents to consummate these fraudulent mortgage loans and disburse the proceeds, some of which these defendants and others would convert for their own use and benefit.

33.     It was a part of the scheme that defendant **M. CALHOUN** and others would recruit persons to purchase homes as "investors" for the purpose of immediately leasing said properties to various tenants identified and selected by defendant **M. CALHOUN** and others.

34.     It was part of the scheme that defendant **W. JONES** and others, would sell some of these properties to various individuals, and that these sales were funded through fraudulent mortgage loans obtained by defendants **M. CALHOUN, A. CALHOUN** and others from various lenders for numerous unqualified borrowers.  Thereafter, defendants **L. KENNEDY** and **K.**

KENNEDY, operating as LCTS, Inc., served as closing agents to consummate these fraudulent

mortgage loans and disburse the proceeds.

35.     To fund the acquisition of the homes, it was part of the scheme that defendants **M.**

**CALHOUN,  A. CALHOUN, W. JONES** and others would obtain basic information from the

prospective borrowers and thereafter match them with mortgage lenders by preparing the loan

application and supporting documents for each borrower and submitting the completed loan

application package to a lender, all for a fee.  No fee was paid to defendants **M. CALHOUN** and

**A. CALHOUN, L. KENNEDY,** and **K. KENNEDY**  unless they were successful in obtaining a

loan for the prospective borrower.

36.     Thereafter, in order to qualify the borrower for the mortgage, defendants **M.**

**CALHOUN, A. CALHOUN** or others acting at their direction, would enter false information

onto the loan application forms in an effort induce the lender to make the loan.  The false

information typically included, but was not limited to, representations that the prospective

borrower was applying for a residential mortgage loan as a primary residence, when in fact

defendants **M. CALHOUN** and **A. CALHOUN** knew that the borrower sought funding to

acquire the residence as a rental property.  In some occasions defendants **M. CALHOUN** and **A.**

**CALHOUN** falsely concealed the borrower's existing or pending financial liability for other

mortgage loans to purchase other rental properties.

37.     It was a part of the scheme that defendants **M. CALHOUN, A. CALHOUN, W.**

**JONES,**  and others would prepare false and fictitious documents to support the false

information contained on the loan application and to insure that lenders would make mortgage

loans to prospective borrowers.  These documents included, but were not limited to, false

verification of employment ("VOE") documents; false residential lease agreements; false

documents verifying a borrower's income and liabilities; and false creditor invoices. The false

and fictitious documents, along with the loan application containing false information, would be

included in each loan application packet submitted by defendants **M. CALHOUN, A.**

**CALHOUN, W. JONES, L. KENNEDY, K. KENNEDY,** and others acting at their direction to

potential lenders.

38.     It was further a part of the scheme that defendant **M. CALHOUN, A.**

**CALHOUN** and others would falsely list that the borrower would provide cash at closing or had

funds for the down payment on the loan application. By falsely and fraudulently making it

appear that certain buyers would provide cash at closing or had made their own down payments,

defendants **M. CALHOUN** and **A. CALHOUN** created the appearance of qualified and

secured mortgages, thus making the mortgages more marketable to a mortgage investor.

39.     Thereafter, defendants **L. KENNEDY, K. KENNEDY,** and others acting at their

direction submitted false documents to the various lenders fraudulently representing that the

borrower paid cash at the closing of the loan or otherwise paid some down payment toward the

loan when no such funds were paid by the borrower.

40.     It was a part of the scheme that defendants **M. CALHOUN, A. CALHOUN, W.**

**JONES**, and others would create fictitious creditors to which borrowers and sellers allegedly

were indebted for construction, management, marketing, and consultant fees,  when in fact no

such debt was owed.

41.     Thereafter, defendants **L. KENNEDY** and **K. KENNEDY**, and others acting at

their direction, would prepare and execute fraudulent HUD-1 Settlement Statements listing these

fictitious creditors, including but not limited to Fast Start Mortgage, Inc., Willie Jones, Metro One Investment, LLC, and M & C Investments, LLC, along with legitimate creditors on the HUD-1 Settlement Statement, or an attachment thereto, so that proceeds from the loan could be disbursed to the fictitious creditor.  These funds for fraudulently invoiced construction, management, marketing, and consultant fees were then provided by defendants **L. KENNEDY, K. KENNEDY** to defendants **M. CALHOUN, A. CALHOUN, W. JONES**, and others, who would convert those funds to their own use and benefit to the detriment of the borrowers, the sellers, and the lenders.

42.     It was a part of the scheme that in order to obtain and retain the mortgage loan proceeds from the lenders, defendants **L. KENNEDY** and **K. KENNEDY** would falsely represent to lenders through their notary of the loan closing documents that the borrowers personally appeared before defendants **L. KENNEDY** and **K. KENNEDY** at the loan closing and executed the loan closing documents in their presence.

43.     It was part of the scheme that defendants **M. CALHOUN, A. CALHOUN, W. JONES,  L. KENNEDY** and **K. KENNEDY** would include the false and fictitious documents, along with the loan application containing false information, in each loan packet submitted to the various lenders located outside the state of Mississippi.

44.     It was a part of the scheme that from approximately September, 2004, through a date unknown but at least through approximately September, 2006, defendants **M. CALHOUN, A. CALHOUN, W. JONES, L. KENNEDY, K. KENNEDY,** and others successfully obtained at least approximately 40 mortgage loans totaling in excess of $9 million by making false entries on documents and creating false documentation submitted to the lenders to obtain the loans.

Defendants **M. CALHOUN, A. CALHOUN,** and **W. JONES, L. KENNEDY, K. KENNEDY,**

and others used private and commercial carriers and interstate wires, either by means of

facsimiles or by causing funds to be wire transferred to financial institutions, to accomplish the

purposes of the scheme.

45.     For the purpose of executing the scheme and in furtherance of the scheme,

defendants **M. CALHOUN, A. CALHOUN,** and **W. JONES, L. KENNEDY,** and **K.**

**KENNEDY,** aided and abetted by others known and unknown to the grand jury, did cause to be

transmitted by means of wire or radio communications in interstate commerce, certain  writings,

signals or sounds.  These transmissions in interstate commerce consisted of funds wired into

Trustmark National Bank, including but not limited to Account Numbers XXX-XXX-9042,

XXX-XX-8631, and XXX-XX-2095, located in the Jackson Division of the Southern District of

Mississippi, from places outside of Mississippi, on or about the dates set forth below:

| COUNT | DATE | DESCRIPTION |
|-------|------|-------------|
| 2 | 10/07/2004 | approximately $46,930.76 wired into Trustmark National Bank to fund a mortgage loan for Borrower # 1 |
| 3 | 02/10/2005 | approximately $266, 592.12 wired into Trustmark National Bank to fund a mortgage loan for Borrower #2 |
| 4 | 02/16/2005 | approximately $368,224.36 wired into Trustmark National Bank to fund a mortgage loan for Borrower #2 |
| 5 | 03/28/2005 | approximately  $88,200.00 wired into Trustmark National Bank to fund a mortgage loan for Borrower #16 |
| 6 | 05/25/2005 | approximately $344,450.50 wired into Trustmark National Bank to fund a mortgage loan for Borrower #9 |
| 7 | 06/16/2005 | approximately $113,952.42 wired into Trustmark National Bank to fund a mortgage loan for Borrower #9 |

| 8  | 11/04/2005 | approximately $360,648.82 wired into Trustmark National Bank to fund a mortgage loan for Borrower #11 |
| 9  | 11/10/2005 | approximately $343,366.02 wired into Trustmark National Bank to fund a mortgage loan for Borrower #8 |
| 10 | 01/12/2006 | approximately $188,406.80 wired into Trustmark National Bank to fund a mortgage loan for Borrower #8 |
| 11 | 02/17/2006 | approximately $393,147.60 wired into Trustmark National Bank to fund a mortgage loan for Borrower #5 |
| 12 | 02/28/2006 | approximately $324,000.00 wired into Trustmark National Bank to fund a mortgage loan for Borrower #12 |
| 13 | 03/20/2006 | approximately $231,600.00 wired into Trustmark National Bank to fund a mortgage loan for Borrower #5 |
| 14 | 03/29/2006 | approximately $381,609.82 wired into Trustmark National Bank to fund a mortgage loan for Borrower #12 |
| 15 | 04/03/2006 | approximately  $285,811.17 wired into Trustmark National Bank to fund a mortgage loan for Borrower #14 |
| 16 | 04/25/2006 | approximately $269,835.90 wired into Trustmark National Bank to fund a mortgage loan for Borrower #14 |

All in violation of Sections 1343 and 2, Title 18, United States Code.

## COUNT 17

46.     The allegations contained in paragraphs 1-9, 11-27, and 29-45 of this indictment are hereby re-alleged and incorporated herein as if fully set forth in this paragraph.

47.     Beginning in or about September, 2004, and continuing through a date unknown but at least through in or about September, 2006, in Hinds County, in the Jackson Division of the Southern District of Mississippi and elsewhere, the defendants **MARK J. CALHOUN,** **WILLIE JONES, J. LARRY KENNEDY**, and **KEITH M. KENNEDY** did knowingly

conspire with each other and other persons both known and unknown to the Grand Jury to

commit the following offenses against the United States:

(A)   to conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud, with the intent to promote the carrying on of such specified unlawful activity, in violation of Section 1956(a)(1)(A)(i), Title 18, United States Code.

(B)   to conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud, with the intent to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of such specified unlawful activity, in violation of Section 1956(a)(1)(B)(i), Title 18, United States Code.

48.   It was an object of the conspiracy for the co-conspirators to use lenders' and

borrowers' money, which was derived from wire fraud, to conduct various financial transactions

which would enrich themselves to the detriment of the lenders and borrowers by converting some

of the proceeds of mortgage loans to their own use and benefit.

49.   It was a part of the conspiracy that defendants **M. CALHOUN, W. JONES** and

others known and unknown to the Grand Jury, created and submitted to **L. KENNEDY and K.**

**KENNEDY** fraudulent invoices on behalf of fictitious creditors, including but not limited to

Metro One Investment, LLC, and Unlimit Construction, LLC, purporting to recover construction,

management, marketing, and consultant fees.

50.   It was further a part of the conspiracy that **L. KENNEDY** and **K. KENNEDY**

would disburse funds from the proceeds of some of the fraudulently obtained loans to defendant

**W. JONES** through Metro One Investment, LLC, and Unlimit Construction, LLC, being

fictitious creditors to induce him to continue his participation in the conspiracy, and to conceal or

disguise from the various lenders and others the nature, the location, the source, the ownership, or the control of the proceeds being disbursed to these business entities.

51.     In furtherance of the unlawful money laundering conspiracy and in order to accomplish the objectives thereof, the following acts, among others, were committed:

(A).    On or about September 29, 2004, defendant **W. JONES** created Metro One Investments, LLC.

(B).    On or about October 5, 2004, defendant **W. JONES** opened Trustmark Bank account number XXX-XXX-0244 in the name of Metro One Investment, LLC.

(C).    On or about October 7, 2004, defendants **M. CALHOUN, W. JONES, K. KENNEDY** and others caused funds to be disbursed to Willie Jones for approximately $20,356.76 from the proceeds of a mortgage loan for Borrower #1.

(D).    On or about January 7, 2005, defendants **M. CALHOUN, W. JONES, L. KENNEDY, K. KENNEDY** and others caused funds to be disbursed to Metro One Investments for approximately $64,293.50 from the proceeds of a mortgage loan for Borrower #2.

(E).    On or about February 10, 2005, defendants **M. CALHOUN, W. JONES, L. KENNEDY, K. KENNEDY** and others caused funds to be disbursed to Metro One Investments for approximately $41,580.08 from the proceeds of a mortgage loan for Borrower #2.

(F).    On or about February 18, 2005, defendants **M. CALHOUN, W. JONES, L. KENNEDY, K. KENNEDY** and others caused funds to be disbursed to Metro One Investments for approximately $17,500.00 from the proceeds of a mortgage loan for Borrower #3.

(G).    On or about March 25, 2005, defendant **W. JONES** created Unlimit Construction, LLC.

(H).     On or about March 25, 2005, defendant **W. JONES** opened Trustmark Bank account number XXX-XXX-5672 in the name of Unlimit Construction, LLC.

(I).     On or about March 28, 2005, defendants **M. CALHOUN, W. JONES, K. KENNEDY** and others caused funds to be disbursed to Unlimit Construction for approximately $38,479.95 from the proceeds of a mortgage loan for Borrower #16.

All in violation of Section 1956(h), Title 18, United States Code.

### COUNTS 18-21

52.     The allegations contained in paragraphs 1-9, 11-27, 29-45, and 48-51 of this indictment are hereby realleged and incorporated herein as constituting and describing the scheme and artifice to defraud from which the proceeds to participate in these money laundering transactions were derived.

53.     On or about the dates set forth below, in Hinds County, in the Jackson Division of the Southern District of Mississippi and elsewhere, defendants **MARK J. CALHOUN, WILLIE JONES, J. LARRY KENNEDY**, and **KEITH M. KENNEDY**, aided and abetted by each other and others known and unknown to the Grand Jury, did knowingly conduct and attempt to conduct the following financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud, knowing that the transactions were designed, in whole or in part, to promote the carrying on of such specified unlawful activity and that, while conducting and attempting to conduct such financial transactions, defendants **M. CALHOUN, W. JONES, L. KENNEDY**, and **K. KENNEDY** knew that the property involved in the financial transactions, that is funds, represented the proceeds of some form of unlawful activity:

| Count | Date | Borrower # | Check # | Financial Institution | Approx. Amount |
|-------|------|-----------|---------|----------------------|----------------|
| 18 | 01/07/05 | 2 | #7274 | Trustmark National Bank | $64,293.50 |
| 19 | 02/10/05 | 2 | #7756 | Trustmark National Bank | $41,580.08 |
| 20 | 02/18/05 | 3 | #7898 | Trustmark National Bank | $17,500.00 |
| 21 | 03/28/05 | 16 | #8514 | Trustmark National Bank | $38,479.95 |

All in violation of Sections 1956 (a)(1)(A)(i), and 2, Title 18, United States Code.

## COUNT 22

54.    The allegations contained in paragraphs 1-9, 11-27, and 29-45 of this indictment are hereby realleged and incorporated herein as if fully set forth in this paragraph.

55.    Beginning in or about September, 2005, and continuing through a date unknown but at least through in or about September, 2006, in Hinds County, in the Jackson Division of the Southern District of Mississippi and elsewhere, the defendants, **MARK J. CALHOUN, APRIL CALHOUN, J. LARRY KENNEDY**, and **KEITH M. KENNEDY** did knowingly conspire with each other and other persons both known and unknown to the Grand Jury to commit the following offenses against the United States:

(A)    to conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud, with the intent to promote the carrying on of such specified unlawful activity, in violation of Section 1956(a)(1)(A)(i), Title 18, United States Code.

(B)    to conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud, with the intent to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of such specified unlawful activity, in violation of Section 1956(a)(1)(B)(i), Title 18, United States Code.

56.    It was the object of the conspiracy for the co-conspirators to use lenders' and borrowers' money, which was derived from wire fraud, to conduct various financial transactions

which would enrich themselves to the detriment of the lenders and borrowers by converting some of the proceeds of mortgage loans to their own use and benefit.

57.     It was further a part of the conspiracy that **L. KENNEDY, K. KENNEDY** and others would disburse funds to defendants **M. CALHOUN** and **A. CALHOUN** through Silver Cross Financial Group, LLC, representing mortgage broker fees for each of the fraudulently obtained loans to induce defendants **M. CALHOUN** and **A. CALHOUN** to continue their participation in the conspiracy.

58.     It was a part of the conspiracy that defendants **M. CALHOUN, A. CALHOUN,** and others, created and submitted to **L. KENNEDY,** and **K. KENNEDY** fraudulent invoices on behalf of fictitious creditors, including but not limited to Fast Start Mortgage, Inc., SCFG, and M & C Investments, LLC, purporting to recover construction, management, marketing, and consultant fees.

59.     It was further a part of the conspiracy that **L. KENNEDY,** and **K. KENNEDY** would disburse funds from the proceeds of some of the fraudulently obtained loans to defendants **M. CALHOUN** and **A. CALHOUN** through Fast Start Mortgage, Inc., SCFG, and M & C Investments, LLC, being fictitious creditors to induce them to continue their participation in the conspiracy,  and to conceal or disguise from the various lenders and others the nature, the location, the source, the ownership, or the control of the proceeds being disbursed to these business entities.

60.     In furtherance of the unlawful money laundering conspiracy and in order to accomplish the objectives thereof, the following acts, among others, were committed:

(A).     On or about September 22, 2005, defendant **M. CALHOUN** opened

BancorpSouth Bank account #XXXX-7391 in the name of Mark Calhoun dba Silver Cross

Financial Group, LLC.

(B).     On or about September 30, 2005, defendant **M. CALHOUN** created Silver Cross

Financial Group, LLC.

(C).     On or about November 4, 2005, defendants **M. CALHOUN, A. CALHOUN, L.**

**KENNEDY, K. KENNEDY** and others caused funds to be disbursed to SCFG for

approximately $55,642.52 from the proceeds of a mortgage loan for Borrower #11.

(D).     On or about November 9, 2005, defendant **A. CALHOUN** created M & C

Investments, LLC.

(E).     On or about November 9, 2005, defendant **A. CALHOUN** opened Regions Bank

account #XX-XXXX-3479 in the name of M & C Investments, LLC.

(F).     On or about November 11, 2005, defendants **M. CALHOUN, A. CALHOUN, L.**

**KENNEDY, K. KENNEDY** and others caused funds to be disbursed to M & C Investments,

LLC,  for approximately $65,196.90 out of the proceeds of a mortgage loan to Borrower #8.

(G).     On or about January 6, 2006, defendant **M. CALHOUN** opened AmSouth Bank

account  #XXX-XXX -2823 in the name of Silver Cross Financial Group, LLC.

(H).     On or about February 17, 2006, defendants **M. CALHOUN, A. CALHOUN,  L.**

**KENNEDY, K. KENNEDY** and others caused funds to be disbursed to M & C Investments,

LLC,  for approximately $58,194.00 out of the proceeds of a mortgage loan to Borrower #5.

(I).     On or about March 03, 2006, defendants **M. CALHOUN, A. CALHOUN, L. KENNEDY**, **K. KENNEDY** and others caused funds to be disbursed to M & C Investments, LLC,  for approximately $64,859.81 out of the proceeds of a mortgage loan to Borrower #12.

(J).     On or about March 29, 2006, defendants **M. CALHOUN, A. CALHOUN, L. KENNEDY**, **K. KENNEDY** and others caused funds to be disbursed to C & M Investments, LLC,  for approximately $46,701.25 out of the proceeds of a mortgage loan to Borrower #12.

(K).     On or about April 4, 2006, defendants **M. CALHOUN, A. CALHOUN, L. KENNEDY**, **K. KENNEDY**  and others caused funds to be disbursed to M & C Investments, LLC,  for approximately $55,485.04 out of the proceeds of a mortgage loan to Borrower #14.

(L).     On or about April 27, 2006, defendants **M. CALHOUN, A. CALHOUN, L. KENNEDY**, **K. KENNEDY** and others caused funds to be disbursed to M & C Investments, LLC,  for approximately $41,715.05 out of the proceeds of a mortgage loan to Borrower #14.

All in violation of Section 1956(h), Title 18, United States Code.

COUNTS 23-29

61.     The allegations contained in paragraphs 1-9, 11-27, 29-45, and 55-60 of this indictment are hereby re-alleged and incorporated herein as constituting and describing the scheme and artifice to defraud from which the proceeds to participate in these money laundering transactions were derived.

62.     On or about the dates set forth below, in Hinds County, in the Jackson Division of the Southern District of Mississippi and elsewhere, defendants **MARK J. CALHOUN, APRIL CALHOUN, J. LARRY KENNEDY** and **KEITH M. KENNEDY**, aided and abetted by each other and others known and unknown to the Grand Jury, did knowingly conduct and attempt to

Page 23 of  28

conduct the following financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud, knowing that the transactions were designed, in whole or in part, to promote the carrying on of such specified unlawful activity and that, while conducting and attempting to conduct such financial transactions, defendants **M. CALHOUN, A. CALHOUN, L. KENNEDY** and **K. KENNEDY** knew that the property involved in the financial transactions, that is funds, represented the proceeds of some form of unlawful activity:

| Count | Date | Borrower # | Instrument | Financial Institution | Approx. Amount |
|---|---|---|---|---|---|
| 23 | 11/11/05 | 8 | Wire | Trustmark National Bank | $65,196.90 |
| 24 | 02/17/06 | 5 | Wire | Trustmark National Bank | $58,194.00 |
| 25 | 03/03/06 | 12 | Wire | Trustmark National Bank | $64,859.81 |
| 26 | 03/29/06 | 12 | Wire | Trustmark National Bank | $46,701.25 |
| 27 | 04/04/06 | 14 | Wire | Trustmark National Bank | $55,485.04 |
| 28 | 04/27/06 | 14 | Wire | Trustmark National Bank | $41,715.05 |
| 29 | 05/02/06 | 14 | Bank Check | Regions Bank | $15,409.00 |

All in violation of Sections 1956(a)(1)(A)(i), and 2, Title 18, United States Code.

### COUNTS 30-34

63.     The allegations contained in paragraphs 1-9, 11-27, 29-45, and 55-60 of this indictment are hereby re-alleged and incorporated herein as constituting and describing the scheme and artifice to defraud from which the proceeds to participate in these money laundering transactions was derived.

64.     On or about the dates set forth below, in Hinds County, in the Jackson Division of the Southern District of Mississippi and elsewhere, defendants **MARK J. CALHOUN, J. LARRY KENNEDY** and **KEITH M. KENNEDY,** aided and abetted by others known and unknown to the Grand Jury, did knowingly conduct and attempt to conduct the following

financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud, knowing that the transactions were designed, in whole or in part, to promote the carrying on of such specified unlawful activity and that, while conducting and attempting to conduct such financial transactions, defendants **M. CALHOUN, L. KENNEDY,** and **K. KENNEDY** knew that the property involved in the financial transactions, that is funds, represented the proceeds of some form of unlawful activity:

| Count | Date | Borrower # | Instrument | Financial Institution | Approx. Amount |
|---|---|---|---|---|---|
| 30 | 05/26/05 | 9 | Wire | Trustmark National Bank | $320,000.00 |
| 31 | 05/26/05 | 9 | Official Bank Check | Trustmark National Bank | $ 30,000.00 |
| 32 | 06/17/05 | 9 | Ck# 10448 | Trustmark National Bank | $ 29,510.69 |
| 33 | 11/04/05 | 11 | Wire | Trustmark National Bank | $ 55,642.52 |
| 34 | 01/24/06 | 17 | Wire | Trustmark National Bank | $143,949.96 |

All in violation of Sections 1956(a)(1)(A)(i) and 2, Title 18, United States Code.

COUNT 35

65.     The allegations contained in paragraphs 1-9, 11-27, 29-45, and 55-60 of this indictment are hereby re-alleged and incorporated herein as constituting and describing the scheme and artifice to defraud from which the proceeds to participate in these money laundering transactions was derived.

66.     On or about November 14, 2005, in Hinds County in the Jackson Division of the Southern District of Mississippi and elsewhere, the defendant **APRIL CALHOUN** did knowingly engage and attempt to engage in a monetary transaction through a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, a cash withdrawal from Regions Bank totaling approximately $62,000.00, such property

having been derived from a specified unlawful activity, that is a violation of Section 1343, Title 18, United States Code, all in violation of Sections 1957 and 2, Title 18, United States Code.

COUNT 36

67.     The allegations contained in paragraphs 1-9, 11-27, 29-45, and 47-51 of this indictment are hereby re-alleged and incorporated herein as constituting and describing the scheme and artifice to defraud from which the proceeds to participate in these money laundering transactions was derived.

68.     On or about January 07, 2005, in Hinds County in the Jackson Division of the Southern District of Mississippi and elsewhere, the defendant, **WILLIE JONES**, did knowingly engage and attempt to engage in a monetary transaction through a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is a Trustmark Bank cash withdrawal #2941 totaling approximately $37,000.00, such property having been derived from a specified unlawful activity, that is a violation of Section 1343, Title 18, United States Code, all in violation of Sections 1957 and 2, Title 18, United States Code.

COUNT 37

69.     The allegations contained in paragraphs 1-9, 11-27, 29-45, and 47-51 of this indictment are hereby re-alleged and incorporated herein as constituting and describing the scheme and artifice to defraud from which the proceeds to participate in these money laundering transactions was derived.

70.     On or about January 08, 2005, in Hinds County in the Jackson Division of the Southern District of Mississippi and elsewhere, the defendant, **WILLIE JONES**, did knowingly engage and attempt to engage in a monetary transaction through a financial institution, affecting

Page 26 of  28

interstate commerce, in criminally derived property of a value greater than $10,000, that is

issuing a monetary instrument, specifically Metro One Investments, LLC, check number 1025

totaling approximately $10,646.18, such property having been derived from a specified unlawful

activity, that is a violation of Section 1343, Title 18, United States Code, all in violation of

Sections 1957 and 2, Title 18, United States Code.

COUNT 38

71.     The allegations contained in paragraphs 1-9, 11-27, 29-45, 47-50, and 55-60 of

this indictment are hereby re-alleged and incorporated herein as constituting and describing the

scheme and artifice to defraud from which the proceeds to participate in these money laundering

transactions was derived.

72.     On or about January 27, 2006, in Hinds County in the Jackson Division of the

Southern District of Mississippi and elsewhere, the defendant, **MARK J. CALHOUN**, did

knowingly engage and attempt to engage in a monetary transaction through a financial institution,

affecting interstate commerce, in criminally derived property of a value greater than $10,000, that

is, a wire transfer from AmSouth Bank totaling approximately $70,000.00, such property having

been derived from a specified unlawful activity, that is a violation of Section 1343, Title 18,

United States Code, all in violation of Sections 1957 and 2, Title 18, United States Code.

NOTICE OF FORFEITURE

73.     As a result of the offenses alleged in Counts 2 through 38, the defendants, **MARK

J. CALHOUN, APRIL CALHOUN, WILLIE JONES, J. LARRY KENNEDY, and KEITH

M. KENNEDY** shall forfeit to the United States all property, real and personal, involved in the

aforesaid offenses and all property traceable to such property, including but not limited to:

(A).    Approximately $9 million in United States Currency and all interest and proceeds thereto, in that such sum in aggregate is property which was involved in the aforesaid offenses or is traceable to such property, pursuant to Sections 981(a)(1)(C) and 982 (a)(1), Title 18, United States Code and Section 2461(c), Title 28, United States Code.

(B).    If any of the property described above as being subject to forfeiture, as a result of any act or omission of any defendant –

> (1)    Cannot be located upon the exercise of due diligence;
>
> (2)    Has been transferred or sold to or deposited with a third person;
>
> (3)    Has been placed beyond the jurisdiction of the Court;
>
> (4)    Has been substantially diminished in value; or
>
> (5)    Has been commingled with other property which cannot be divided

without difficulty; it is the intent of the United States, pursuant to Section 982(b), Title 28, United States Code, to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property, that is approximately $9 million.

All pursuant to Sections 981(a)(1)(C) and 982 (a)(1), Title 18, United States Code and Section 2461(c), Title 28, United States Code.

for  STAN HARRIS
Acting United States Attorney

A TRUE BILL:

s/ Signature Redacted

Foreperson of the Grand Jury